# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN RE JEFFREY S. BERMAN        )        No. 1:14MC47

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Jeffrey S. Berman's Petition for Reinstatement (Docket Entry 15). Because Mr. Berman has not carried his burden under Local Rule 83.10h(c), the Court should deny his request for reinstatement.

This Court (per then-Chief United States District Judge William L. Osteen, Jr.) previously suspended Mr. Berman from the bar of this Court for one year, as a result of his one-year suspension by the North Carolina State Bar. (See Docket Entry 8 ("MDNC Suspension Order") at 1-2 (referring to North Carolina State Bar v. Berman, No. 12 DHC 31 (N.C. State Bar, Disc. Hrg. Comm'n May 1, 2013) (unpublished) ("State Bar Suspension Order"), aff'd, No. COA13-1249, 234 N.C. App. 116 (table), 2014 WL 2116535 (May 20, 2014) (unpublished), discretionary rev. denied, 367 N.C. 526 (2014)).) The MDNC Suspension Order explicitly advised Mr. Berman that: "When an attorney's privilege to practice in this Court has been suspended for more than three months, . . . reinstatement to practice before this Court is dependent upon compliance with the provisions of LR 83.10h and proof of being in good standing with the State Bar at the time a petition for reinstatement is filed." (Id. at 2 (emphasis added).) Per that Local Rule, (A) "[a]n

attorney actively suspended for more than three months . . . may not resume practice until reinstated by order of this Court," M.D.N.C. LR 83.10h(a), (B) "[p]etitions for reinstatement by a . . . suspended attorney . . . shall be filed with the Court," M.D.N.C. LR 83.10h(c), and (C) such petitions shall proceed to "a hearing at which [the] petitioner shall have the burden of [proof] by clear and convincing evidence," id.

The State Bar Suspension Order, in turn, provided that:

> At the conclusion of the one year active suspension of his license, [Mr. Berman] may apply to be reinstated to the practice of law by filing a petition with the Secretary of the North Carolina State Bar demonstrating compliance with the general provisions for reinstatement set forth in 27 N.C. Admin. Code Chapter 1, Subchapter B § .0125(b) and demonstrating the following by clear, cogent, and convincing evidence:
>
> a. <u>That he properly wound down his law practice and complied with the terms of § .0124 of the State Bar Discipline & Disability Rules</u>;
>
> . . . .
>
> f. <u>That he has not violated the Rules of Professional Conduct</u> or the laws of the United States or any state.

Berman, No. 12 DHC 31, at 8-9 (emphasis added).

Subsequently, by order dated September 28, 2015, the North Carolina State Bar reinstated Mr. Berman. (See Docket Entry 9 ("State Bar Reinstatement Order") at 1-2.) The State Bar Reinstatement Order noted that "[t]he [State Bar Suspension] Order set forth several requirements with which [Mr.] Berman was required to comply in order to be eligible for reinstatement. In his

2

<u>verified</u> petition [for reinstatement to the North Carolina State Bar], <u>[Mr.] Berman described the actions he ha[d] taken to comply with the requirements of the [State Bar Suspension] Order</u> . . . ." (<u>Id.</u> at 1 (emphasis added).)  Based on Mr. Berman's representations regarding compliance with the requirements of the State Bar Suspension Order, the North Carolina State Bar concluded that he "ha[d] satisfied the conditions established in the [State Bar Suspension] Order for reinstatement to active status." (<u>Id.</u> at 2.)

On January 6, 2016, Mr. Berman filed a Verified Petition for Reinstatement in this Court. (<u>See</u> Docket Entry 10 ("First MDNC Reinstatement Petition") at 1-3.)  In the First MDNC Reinstatement Petition, Mr. Berman purported to "demonstrate[] compliance with [Local] Rule 83.10h(a)" (<u>id.</u> at 2), by averring, inter alia, that "[he] complied with the Rules of the NC State Bar in the windup of his law practice" (<u>id.</u>), "[he] complied with all applicable orders of the Disciplinary Commission during his period of suspension" (<u>id.</u>), and "[he] abstained from any conduct which would constitute grounds for discipline under [North Carolina law]" (<u>id.</u>), including by "not violat[ing] the Rules of Professional Conduct" (<u>id.</u>). Following the issuance of a Notice of Hearing (<u>see</u> Docket Entry 11 at 1), Mr. Berman filed a Notice of Voluntary Dismissal (<u>see</u> Docket Entry 12 at 1).  The Court (per then-Chief Judge Osteen) thereafter dismissed the First MDNC Reinstatement Petition without prejudice by order dated March 10, 2016.  (<u>See</u> Docket Entry 13 at 2.)

3

On September 14, 2016, Mr. Berman was "censured by the North Carolina State Bar for [his] violation of the Rules of Professional Conduct." (Docket Entry 14 ("State Bar Censure") at 2.) The State Bar Censure found as follows:

> During the 30 days before [Mr. Berman] w[as] suspended from the practice of law . . ., [he] w[as] required to comply with the provisions of 27 N.C. Admin. Code Ch. 1B, § .0124 ("Rule .0124") in winding down [his] practice. The letter by which [Mr. Berman] notified [his] clients of the suspension did not state the reasons for the suspension, as required by Rule .0124, and [he] did not notify all of [his] clients "promptly," as required by the Rule. In addition, [Mr. Berman] failed to timely withdraw from several client matters, and did not refund unearned fees to a client for whom [Mr. Berman] had not completed agreed-upon services. By failing to comply with Rule .0124 as ordered by the [Disciplinary Hearing Commission], [Mr. Berman] knowingly disobeyed an obligation under the rules of the tribunal in violation of Rule 3.4(c) [of the Rules of Professional Conduct]. [Mr. Berman's] failure to promptly notify several clients, timely withdraw from at least two cases, and refund an unearned fee were also in violation of Rule 1.16(d) [of the Rules of Professional Conduct] . . . .
>
> . . . In [one] case, the certificate of service on [Mr. Berman's] motion to withdraw stated that [he] served the motion on 12 September 2014, but [he] did not actually serve the motion until after it was filed on 23 September 2014. [Mr. Berman's] false certification regarding the date of service violated Rule 11 of the Rules of Civil Procedure and therefore is an additional instance in which [he] violated Rule 3.4(c) [of the Rules of Professional Conduct]. In response to an inquiry from the State Bar about the Wheely case, [Mr. Berman] falsely stated that [he] w[as] unaware that the opposing party was represented at the time [Mr. Berman] prepared the motion to withdraw, and falsely stated that [he] eventually told opposing counsel that [Mr. Berman] w[as] closing [his] practice. Th[o]se misrepresentations were in violation of Rules 8.1(b) and 8.4(c) [of the Rules of Professional Conduct].

(Id. at 1-2 (emphasis added).)

On or about November 8, 2021, Mr. Berman submitted an Application for Admission to Practice in the United States District Court for the Middle District of North Carolina ("Admission Application"), wherein he "certif[ied] that [he] ha[d] read and [was] familiar with . . . the Local Rules of th[is Court] . . . ."[1] After the Clerk's Office reminded Mr. Berman that, under Local Rule 83.10h, he must petition for reinstatement (not simply apply for admission like an attorney never before admitted), Mr. Berman filed his instant Petition for Reinstatement (see Docket Entry 15 ("Second MDNC Reinstatement Petition") at 1-3), wherein he stated, inter alia, that "[he] ha[d] successful [sic] rehabilitated & corrected any problems or occurrences leading to his suspension" (id. at 1) and that "[he] ha[d] not received any disciplinary action from the NC State Bar since 2016" (id.). The Second MDNC Reinstatement Petition, however, (A) did not disclose the State Bar Censure, (B) did not retract Mr. Berman's misstatements in the First MDNC Reinstatement Petition (about complying with the North Carolina State Bar's mandates as to the windup of his practice and with the Rules of Professional Conduct), and (C) did not explain his decision to submit the Admission Application rather than to file a reinstatement petition as required by Local Rule 83.10h

---

[1] A copy of the Admission Application (with redactions consistent with Federal Rule of Civil Procedure 5.2(a)) is appended to this Recommendation.

5

(notwithstanding his certification in the Admission Application of his review and knowledge of the Local Rules). (See id. at 1-3.)

Chief United States District Judge Thomas D. Schroeder "refer[red] this matter to [the undersigned] Magistrate Judge [] for setting a prompt hearing pursuant to Local Rule 83.10h(c)." (Docket Entry 16 at 1.) The undersigned Magistrate Judge promptly set the hearing (see Text Order dated Dec. 27, 2021), which occurred as scheduled (see Minute Entry dated Jan. 4, 2022). At that hearing, Mr. Berman:

> ha[d] the burden of demonstrating by clear and convincing evidence that [he] ha[d] the moral qualifications, competency, and learning of the law required for admission to practice before this Court, and that [his] resumption of the practice of law will not be detrimental to the integrity and standing of the Bar or the administration of justice or subversive of the public interest.

M.D.N.C. LR 83.10h(c) (emphasis added). Mr. Berman has not carried his heavy burden in that regard.

As an initial matter, the Court should note that Mr. Berman's suspension by the North Carolina State Bar (and derivatively by this Court) stemmed from his commission of multiple and varied acts of deception directed towards judges and attorney regulatory processes. See Berman, 2014 WL 2116535, at *3 (affirming "finding [that Mr.] Berman failed in his duty of candor and honesty as an attorney and officer of the court by omitting material information and making a false statement in his submission of [a] consent order to [a state] court"), *5 ("The findings [by the Disciplinary

6

Hearing Commission] show that [Mr.] Berman twice concealed [a] pending grievance from the Dispute Resolution Commission . . . ."), *6 (upholding "conclusion that [Mr.] Berman's failure to disclose to [a] second judge that [a] request . . . had been denied [by first judge] constituted a failure to inform the tribunal of all material facts that would enable the tribunal to make an informed decision" and commenting that Mr. Berman simply disagreed "with what he term[ed] the 'draconian' policies and local rules of court for Guilford County"). "In addition, the [Disciplinary Hearing Commission's] findings support[ed the] conclusion[] that [Mr.] Berman's conduct constituted a <u>pattern of misconduct</u> having a <u>negative impact on the administration of justice</u> . . . ." <u>Id.</u> at *7 (emphasis added); <u>see also</u> <u>id.</u> (citing Disciplinary Hearing Commission's conclusion that Mr. Berman engaged in "acts of dishonesty, misrepresentation, or deceit," while affirming its assessment of need to "protect the public from [his] future transgressions"). Moreover, during the disciplinary process, "[Mr.] Berman sought to justify his actions and did not express remorse." <u>Id.</u> at *6. And that troubling stance extended to Mr. Berman's appeal of the State Bar Suspension Order, with the North Carolina Court of Appeals ruling that "[his] arguments to th[at c]ourt constitute[d] rationalizations and excuses for his misconduct, [which made] clear that [he still] failed [to] show any remorse for his misconduct." <u>Id.</u> at *7.

7

Regrettably, Mr. Berman's subsequent actions (in at least six contexts) reveal an alarming continuation of (rather than the needed change in) that approach to his professional obligations which resulted in the MDNC Suspension Order. First (as documented in the State Bar Censure excerpt above), at the inception of Mr. Berman's service of his one-year suspension by the North Carolina State Bar, he did not wind up his practice in the manner mandated by the State Bar Suspension Order (and related rules of the North Carolina State Bar). Of particular concern, Mr. Berman's noncompliance featured elements of concealment, as his letter to his clients "did not state the reasons for the suspension, as required by Rule .0124" (Docket Entry 14 at 1), and of financial malfeasance, as he "did not refund unearned fees to a client" (id.). Furthermore, Mr. Berman made a "false certification regarding [a] date of service [of a withdrawal motion]" (id. at 2), and, "[i]n response to an inquiry from the State Bar about th[at] case, [he] falsely stated that [he] w[as] unaware that the opposing party was represented . . . and falsely stated that [he] eventually told opposing counsel . . . [about the] closing [of his] practice" (id.). Those numerous, diverse forms of deception-infused misconduct violated a variety of the Rules of Professional Conduct. (See id. at 1-2 (cataloging violations of Rules of Professional Conduct 1.16(d), 3.4(c), 8.1(b), and 8.4(c)).)

8

Second (and relatedly), when Mr. Berman petitioned the North Carolina State Bar for reinstatement, he swore that he had complied with the State Bar Suspension Order's terms (including obeying all applicable practice-windup rules and Rules of Professional Conduct, see Berman, No. 12 DHC 31, at 8-9), when – as the State Bar Censure later demonstrated – Mr. Berman actually had not so complied, but instead had contravened the practice-windup rules and Rules of Professional Conduct in myriad, disturbing ways (see Docket Entry 14 at 1-2). Third (and similarly), in the First MDNC Reinstatement Petition, Mr. Berman averred that "[he had] complied with the Rules of the NC State Bar in the windup of his law practice" (Docket Entry 10 at 2), as well as that "[he had] abstained from any conduct which would constitute grounds for discipline under [North Carolina law]" (id.) and "[h]a[d] not violated the Rules of Professional Conduct" (id.). Again, however, contrary to those unequivocal averments, Mr. Berman, in fact (as confirmed by the State Bar Censure), had violated the State Bar's practice-windup rules (on several fronts) and had violated four distinct Rules of Professional Conduct (via various forms of deceit).

Fourth (as previously documented), after withdrawing the First MDNC Reinstatement Petition (which he filed "[p]ursuant to Local Rule 83.10h" (Docket Entry 10 at 1 (errant parentheses omitted))), Mr. Berman failed to comply with the plain language of the MDNC Suspension Order and Local Rule 83.10h by submitting the Admission

9

Application, instead of a renewed reinstatement petition. Fifth, in the Admission Application, Mr. Berman "certif[ied] that [he] ha[d] read and [was] familiar with . . . the Local Rules," leaving only two explanations for his submission of the Admission Application: (1) he willfully disregarded Local Rule 83.10h's reinstatement procedure; or (2) he falsely certified that he read and attained familiarity with Local Rule 83.10h. Sixth, when (after prompting by the Clerk's Office) Mr. Berman eventually filed the Second MDNC Reinstatement Petition, he conspicuously neglected therein (A) to disclose the State Bar Censure, which contradicted his sworn statements in the First MDNC Reinstatement Petition about his supposed compliance with the practice windup requirements imposed by the North Carolina State Bar rules and the State Bar Suspension Order, as well as his purported adherence to the Rules of Professional Conduct, (B) to correct those sworn statements even after the State Bar Censure debunked them, and (C) to account for his submission of the Admission Application in contravention of the clear commands of both the MDNC Suspension Order and Local Rule 83.10h (the dictates of which, according to the Admission Application, he then well-knew).

In the face of the foregoing record material, the information Mr. Berman presented at the hearing on the Second MDNC Reinstatement Petition fell far short of clear and convincing proof that he possesses "the moral qualifications, competency, and

10

learning of the law required for admission to practice law before this Court," M.D.N.C. LR 83.10h(c), and/or that his "resumption of the practice of law [in this Court] will not be detrimental to the integrity and standing of the Bar [of this Court] or the administration of justice or subversive of the public interest," id.[2] As an overview, the hearing generally proceeded as follows:

1) at the outset, the undersigned Magistrate Judge inquired about what, if any, evidence Mr. Berman wished to present and he replied that he wished to make a brief statement and to have his employer, Mr. Stephen Robertson, address the Court;

2) Mr. Berman then gave his brief statement, which tracked the Second MDNC Reinstatement Petition's largely conclusory language;

3) the undersigned Magistrate Judge thereafter posed a few questions to Mr. Berman and heard his answers; and

4) the hearing concluded with Mr. Robertson giving a (positive) assessment of Mr. Berman.

During the colloquy-portion of the hearing, the undersigned Magistrate Judge asked Mr. Berman to describe the circumstances which resulted in the State Bar Censure. In response, Mr. Berman referenced only two matters: (1) his failure to timely give notice of his suspension from the practice of law to one client (which he attributed to oversight); and (2) his decision not to reveal the

---

[2] The Clerk's Office audio-recorded the hearing and, in preparing this Recommendation, the undersigned Magistrate Judge listened to (and relied on) that audio-recording.

11

basis of his suspension to opposing counsel in one case (which he attributed to advice from another attorney).  Notably, Mr. Berman did <u>not</u> mention five other elements of the State Bar Censure, i.e., that:  (1) "[t]he letter by which [he] notified [his] clients of the suspension did not state the reasons for the suspension, as required by Rule .0124" (Docket Entry 14 at 1); (2) "[he] failed to timely withdraw from several client matters" (<u>id.</u>); (3) "[he] did not refund unearned fees to a client for whom [he] had not completed agreed-upon services" (<u>id.</u>); (4) "[he made a] false certification regarding the date of service [of a motion to withdraw from a case]" (<u>id.</u> at 2); and (5) "[i]n response to an inquiry from the State Bar about th[at ] case, [he] falsely stated that [he] w[as] unaware that the opposing party was represented at the time . . . and falsely stated that [he] eventually told opposing counsel that [he] w[as] closing [his] practice" (<u>id.</u>).

Mr. Berman's failure to acknowledge the full scope of his misconduct underlying the State Bar Censure mirrors his broader course of dealings (detailed above), which gave rise to the State Bar Suspension Order (and, by extension, the MDNC Suspension Order), the State Bar Censure, and the deficiencies in his reinstatement-related filings.  Specifically, in discussing the State Bar Censure at the hearing on the Second MDNC Reinstatement Petition (just as he repeatedly has done in the past), Mr. Berman ignored/concealed material matters and failed/refused to accept

12

basis of his suspension to opposing counsel in one case (which he attributed to advice from another attorney).  Notably, Mr. Berman did <u>not</u> mention five other elements of the State Bar Censure, i.e., that:  (1) "[t]he letter by which [he] notified [his] clients of the suspension did not state the reasons for the suspension, as required by Rule .0124" (Docket Entry 14 at 1); (2) "[he] failed to timely withdraw from several client matters" (<u>id.</u>); (3) "[he] did not refund unearned fees to a client for whom [he] had not completed agreed-upon services" (<u>id.</u>); (4) "[he made a] false certification regarding the date of service [of a motion to withdraw from a case]" (<u>id.</u> at 2); and (5) "[i]n response to an inquiry from the State Bar about th[at ] case, [he] falsely stated that [he] w[as] unaware that the opposing party was represented at the time . . . and falsely stated that [he] eventually told opposing counsel that [he] w[as] closing [his] practice" (<u>id.</u>).

Mr. Berman's failure to acknowledge the full scope of his misconduct underlying the State Bar Censure mirrors his broader course of dealings (detailed above), which gave rise to the State Bar Suspension Order (and, by extension, the MDNC Suspension Order), the State Bar Censure, and the deficiencies in his reinstatement-related filings.  Specifically, in discussing the State Bar Censure at the hearing on the Second MDNC Reinstatement Petition (just as he repeatedly has done in the past), Mr. Berman ignored/concealed material matters and failed/refused to accept

12

full responsibility for his misconduct. That circumstance weighs heavily against his reinstatement.

Additionally, Mr. Berman could not explain why he did not disclose the State Bar Censure in the Second MDNC Reinstatement Petition. Mr. Berman's lack of justification for his lack of candor on that point stands out <u>not only</u> because it fits the previously highlighted behavioral pattern which resulted in his receipt of disciplinary sanctions and which marred his prior efforts at regaining his professional standing, <u>but also</u> because it runs counter to his own description of the steps he claimed (at the hearing) to have taken to avoid any further violations of the Rules of Professional Conduct. To that end, when invited to elaborate on the assertion in the Second MDNC Reinstatement Petition that "[he] ha[d] successful[ly] rehabilitated [and] corrected any problems or occurrences leading to his suspension in 2014" (Docket Entry 15 at 1), Mr. Berman stated that "part of what originally led to [his] suspension was the allegations made that [he] was not entirely forthcoming with [certain] information, . . . so [he is] particularly cautious and particularly careful that [he] make[s] all the proper statements . . . ." In other words, despite recognizing a need to focus on candidly communicating with judicial officials, Mr. Berman consciously chose not to reveal his State Bar Censure when he sought reinstatement to this Court. That evidence,

13

from Mr. Berman's own mouth, strongly supports denial of the Second MDNC Reinstatement Petition.

Finally (as concerns Mr. Berman's hearing testimony), after Mr. Berman blamed his decision to submit the Admission Application (rather than to file a renewed reinstatement petition) on advice from an employee of the Clerk's Office, the undersigned Magistrate Judge asked Mr. Berman why he relied on any such advice, given that it directly contradicted the plain language of the Local Rules, which he certified (in the Admission Application) he had read. In reply, Mr. Berman confessed that he had not actually read the Local Rules before he submitted the Admission Application and conceded that he could not offer any excuse for falsely certifying otherwise. That admission <u>alone</u> warrants the Second MDNC Reinstatement Petition's denial.

Arrayed against all the foregoing facts and circumstances (which point decisively toward rejection of Mr. Berman's reinstatement request) stands only Mr. Robertson's remarks vouching (in fairly general terms) for Mr. Berman's character and fitness as an attorney. The undersigned Magistrate Judge does not doubt the sincerity of Mr. Robertson's belief in Mr. Berman, but deems that endorsement inadequate – in light of the other, essentially uncontested evidence in the record, which reflects unfavorably on Mr. Berman's candidacy for restored membership in the bar of this

14

Court – to satisfy Rule 83.10h(c)'s standard, particularly not by the requisite clear and convincing level of proof.[3]

"For the most part, the judiciary runs on the honor system. [Judges] trust that attorneys . . . will play fair." Tom v. S.B., Inc., 280 F.R.D. 603, 621 (D.N.M. 2012). Mr. Berman has not shown himself worthy of a return to this Court's circle of trust.

**IT IS THEREFORE RECOMMENDED** that the Second MDNC Reinstatement Petition (Docket Entry 15) be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 15, 2023

---

[3] On that last point, the undersigned Magistrate Judge notes that "[c]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012) (internal brackets and quotation marks omitted); see also California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater, 454 U.S. 90, 93 n.6 (1981) (observing that "clear and convincing" standard "require[s] a [litigant] to prove his [or her] case to a higher probability than is required by the preponderance-of-the-evidence standard").